UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>      Plaintiff, )<br>                                )<br>v.                                   )<br>                                     )<br>DECARLOS FRAZIER, )<br>      Defendant. ) | CAUSE NO.: 2:14-CR-34-JVB-JPK<br>                  2:19-CV-33-JVB |

**OPINION AND ORDER**

This matter is before the Court on a Motion Under 28 U.S.C. § 2255 [DE 128] filed by Defendant Decarlos Frazier on January 18, 2019. Frazier, who is litigating the motion without counsel, filed a memorandum in support and two supplements. The Government responded on February 21, 2020.

Frazier was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Frazier argues that his trial counsel was ineffective for not making Frazier aware of the implications of waiving his objection to his armed career criminal status, failing to investigate and subpoena the 911 dispatcher, failing to object to the testimony of fingerprint expert Alison Rees, and failing to impeach Officer Dumas. Frazier also asserts that he can obtain retroactive relief through *Rehaif v. United States*, 129 S. Ct. 2191 (2019).

For the following reasons, Frazier's motion is denied. Further the request for an evidentiary hearing is denied, and the Court will not issue a certificate of appealability.

**BACKGROUND**

Frazier was charged in a one-count indictment of being a felon in possession of a firearm. At his jury trial, Frazier, who was represented by counsel, stipulated that he had previously been convicted of a felony. (Trial Tr. 8:18-10:13, ECF No. 116). The jury rendered a guilty verdict, and

Frazier was sentenced on November 15, 2016, to 180 months of imprisonment followed by three years of supervised release. Frazier did not object at sentencing to being deemed as having Armed Career Criminal status.

On November 30, 2016, Frazier's trial counsel filed a notice of appeal and was eventually replaced by appellate counsel. Appellate counsel filed an *Anders* brief and sought permission from the Seventh Circuit Court of Appeals to withdraw his appearance, which was granted on January 22, 2018, and the appeal was dismissed. *United States v. Frazier*, 710 F. App'x 251 (7th Cir. 2018).

## ANALYSIS

Title 28 section 2255(a) provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Relief under § 2255 is only appropriate for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)). Frazier argues that he should be granted relief under § 2255 due to ineffective assistance of his trial counsel and, he argues, because *Rehaif* provides him with retroactive relief.

### A. Ineffective Assistance of Counsel

Supreme Court case *Strickland v. Washington* provides the standard for ineffective assistance of counsel. 466 U.S. 668 (1984). This standard requires that "a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial." *Massaro v. United States*, 538 U.S. 500, 505 (2003). The two parts of the standard are often referred to as the "performance" prong and the "prejudice" prong.

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

The performance prong is met if the challenger shows that counsel's representation "fell below an objective standard of reasonableness." *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). The review of an attorney's performance is highly deferential to mitigate hindsight bias, and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington*, 562 U.S. at 104 (internal quotation marks omitted). The *Strickland* analysis "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harris v. United States*, 13 F.4th 623, 630 (7th Cir. 2021), reh'g denied (Nov. 10, 2021) (quoting *Harrington*, 562 U.S. at 110). The Court "will not presume deficient performance based on a silent record because [the Court] presume[s] counsel made reasonable strategic choices unless the defendant presents evidence rebutting that presumption. *United States v. Traeger*, 289 F.3d 461, 472 (7th Cir. 2002).

The prejudice prong is met if the challenger shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 694).

Frazier submits four arguments for finding his trial counsel to be ineffective: (1) counsel did not make Frazier aware of the implications of waiving his objection to his armed career

3

criminal status, (2) counsel did not subpoena the 911 dispatcher, (3) counsel did not object to expert testimony, and (4) counsel did not impeach Officer Dumas.

    1.    *Armed Career Criminal Status*

Frazier contends that his counsel deceptively obtained Frazier's waiver of his right to attack his armed career criminal (ACC) status. The record shows that Frazier initially objected to being characterized as an ACC. However, in Frazier's sentencing memorandum, which was filed by counsel, Frazier conceded that he fit the ACC definition. At the sentencing hearing, the Court asked Frazier, "Do you agree that you have no objections to the presentence report?" to which Frazier responded, "Yes, I agree." [1] (Sentencing Tr. 5:6-8, ECF No. 119).

Frazier acknowledges that *United States v. Dickerson*, 901 F.2d 579, 584 (7th Cir. 1990), establishes that the Illinois Armed Robbery Statute is a crime of violence for the purpose of the Armed Career Criminal Act (ACCA). *See* (Mot. at 6, ECF No. 129). Frazier maintains that conceding ACC status must have been involuntary or unintelligent because it was not in his best interest to do so and because he could not have known that his concession would take away his chance to ask the Seventh Circuit Court of Appeals to change its precedent. That is, Frazier argues that, but for his counsel's deficient performance in advising Frazier to waive objections to ACC status, Frazier would have had a different sentencing result after appealing to the Seventh Circuit and asking it to overturn *Dickerson*.

This argument does not pass the prejudice prong of the *Strickland* standard. On June 21, 2019, the Seventh Circuit Court of Appeals in *Klikno v. United States* reaffirmed that Illinois armed

---

[1] Frazier makes much of an earlier question posed: "Mr. Frazier, do you agree you have no objections to the presentencing report?" to which he responded "yes – No." (Sentencing Tr. 5:1-3, ECF No. 119). Frazier would have the Court interpret this as showing Frazier was uncertain whether he wanted to concede to ACC status. However, the Court followed up by restating the question presented above and received the definitive answer of "Yes, I agree." In context, it is clear that the confusion was regarding the phrasing of the question and not whether he wished to make the waive any objections to ACC status.

robbery is a violent felony under the ACCA. 928 F.3d 539, 549 (7th Cir. 2019) ("[W]e reaffirm our view that Illinois robbery and armed robbery require 'force sufficient to overcome the victim's resistance,' and thus a conviction under either of those laws may be used as a predicate under ACCA."). In *Klikno*, the Seventh Circuit discussed *Shields v. United States*, a decision it rendered on March 21, 2018, affirming that Illinois armed robbery is a violent felony for ACCA purposes. 885 F.3d 1020 (7th Cir. 2018) *vacated by Shields v. United States*, 139 S. Ct. 1257 (granting certiorari). Notably, *Shields* was decided fifty-seven days after Frazier's appeal was dismissed. *Shields* was vacated when certiorari was granted, but the outcome was upheld when the case returned to the Seventh Circuit on remand from the Supreme Court. *Klikno*, 928 F.3d at 539.[2]

Given the temporal proximity between *Shields* and Frazier's appeal and the fact that *Shields* and the later-decided case of *Klikno* affirm that Illinois robbery and armed robbery statutes are violent felonies for the purpose of the ACCA, there is no reasonable probability that the outcome would have been any different had Frazier been procedurally permitted to argue on appeal that he did not qualify for ACC status because *Dickerson* should be overturned. Thus, assuming that counsel did not explain to Frazier that conceding ACC status would preclude Frazier from asking the Seventh Circuit to overturn *Dickerson*, there is essentially no reason to believe that the Seventh Circuit would have overturned *Dickerson* if Frazier had made the argument. Thus, there is no prejudice here, and this argument fails to show ineffective assistance of counsel.

   2.   911 Dispatcher

Frazier next asserts that his counsel should have investigated and subpoenaed the dispatcher who generated a CAD report that conflicted with Officer Pena's testimony. The police dispatcher recorded Officer Pena as saying that a male observed Frazier toss a gun under a vehicle

---

[2] *Shields* was one of six cases consolidated under the name *Klikno* on remand

5

when Officer Pena testified that he personally observed Frazier toss the gun. Officer Pena also testified "…if you go back and listen to the dispatchers and what they said, I did not say 'male subject tossed the gun,' or, 'male subject seen him.' I said I seen him personally." (Trial Tr. 71:5-8,[3] ECF No. 117).

To succeed on an ineffective assistance of counsel argument based on the failure to call a witness, the petitioner must indicate what the witness testimony would have been. *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991). "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnote omitted).

Here, Frazier's argument is based on the assumption that the dispatcher's testimony would be favorable to Frazier and show that Officer Pena perjured himself. However, Frazier himself equivocates as to what aid the dispatcher's testimony would provide his case:

> Counsel for the defendant, after discovering that the CAD report generated by the dispatcher contained information showing that the government's star witness, Officer Pena, [*m*]*ay* have committed perjury should've investigated and subpoena[ed] the dispatcher to substantiate *whether* the CAD report she generated was accurate and *to make the determination of whether or not* . . . Officer Pena made the statement that a male named Ticco Murray saw Mr. Frazier throw the handgun on the car, but *possibly* did not want to become involved in the case. Substantiating *whether* Officer Pena communicated that statement to the dispatcher, in all fairness, is critical to Frazier's defense . . . .

(Mot. at 11, ECF No. 129 (emphasis added)). These allegations are full of hedges and do not specify what the dispatcher's testimony would have been; they are only "self-serving speculation." *Ashimi*, 932 F.2d at 650.

---

[3] The trial transcript page numbers cited are the cumulative page numbers for all three volumes of the transcript and not the numbers assigned by the CM/ECF system.

The implication behind Frazier's prevarication is that the dispatcher's testimony may have contradicted Officer Pena's testimony, but it is also possible that the dispatcher's testimony would have corroborated it. "A defendant's speculation about what evidence might have been found is insufficient to demonstrate prejudice—he must show what the evidence would have been and how it would have produced a different result." *Traeger*, 289 F.3d at 472 (citing *United States v. Shetterly*, 971 F.2d 67, 75 (7th Cir.1992)); *see also Harden v. United States*, 986 F.3d 701, 708 (7th Cir. 2021) (holding that collateral relief is not justified on an argument that counsel did not introduce exculpatory testimony where the petitioner failed to show that the testimony exists).

Turning to performance, Frazier's counsel cross-examined Officer Pena in attempt to undermine his credibility. (Trial Tr. 48:5-107:14, ECF No. 117). Counsel specifically asked Officer Pena if he was covering for a witness who did not want to be involved in the case, and Officer Pena denied that being true. *Id.* at 82:19-22. Further, counsel worked hard to get the CAD report admitted to the record to challenge Officer Pena's testimony. *Id.* at 64:4-82:7, 103:11-24. Perhaps ignoring the existence of the report saying that "a male" saw Frazier tossing the firearm could be ineffective assistance, but that is not what happened here. Counsel's decision to use only the report instead of bringing in the dispatcher to testify about the report was a strategic decision and was objectively reasonable.

Frazier has not met his burden of showing that the dispatcher's testimony would have been exculpatory, and the use of the CAD report (instead of dispatcher testimony) in attempt to cast doubt on the accuracy of Officer Pena's testimony was a strategic decision. Counsel's performance was not deficient, and Frazier has not shown prejudice. This argument does not establish that Frazier received ineffective assistance of counsel.

### 3. Expert Testimony

Frazier argues that his counsel was ineffective because he did not object to the testimony of Alison Rees, a fingerprint specialist. Rees testified to various factors that affect whether a latent fingerprint will be left on an item. (Trial Tr. 203:22-205:22, ECF No. 117). She also testified that no latent fingerprints were recovered from the firearm that Frazier was found to have possessed. *Id.* at 208:2-4. Frazier clarifies that his argument is that his counsel was ineffective because he did not object to Rees's testimony on the basis that the testimony

> failed to establish that the conditions established by the expert testimony (why Mr. Frazier's finger prints [were] not on the gun after Officer Pena stated that he saw Mr[.] Frazier remove the gun from his waist and placed it under a car) were the conditions on the day in question that justified why Mr. Frazier's finger prints were not on the gun.

(Mot. for Leave at 2, ECF No 130). However, Rees's testimony did provide a few possible reasons to explain why no fingerprints were recovered: the firearm's surface was non-porous, the way in which firearms are often handled does not provide much surface area on which fingerprints may be left, fingerprints cannot be developed on corrugated plastic, and the act of removing a firearm from a pocket or waistband may wipe away fingerprints. (Trial Tr. 208:22-209:17, ECF No. 117).

Further, Frazier's counsel cross-examined Rees. He asked Rees about the likelihood of getting fingerprints off of different items (including ammunition) and about whether she was given the ammunition recovered in this case for fingerprint testing. *Id.* at 210:15-213:7.

The fact that counsel did not inquire into environmental factors that may have made a fingerprint more or less likely to develop was a strategic decision and does not make counsel's performance objectively deficient. Rees had already testified as to several factors that could have caused the lack of fingerprints on the weapon. There was no ineffective assistance of counsel in this regard.

### 4.  *Impeachment of Officer Dumas*

Frazier raises one more argument for finding ineffective assistance of counsel. He maintains that his counsel should have impeached Officer Dumas. Officer Dumas testified on cross-examination that Officer Pena prepared the property inventory sheet in this case, (Trial Tr. 186:24-25, ECF No. 117), and on redirect, Officer Dumas testified that Officer Pena had tagged the evidence and typed the property inventory report and Officer Dumas typed the arrest report, *id.* at 192:3-12. The Government disclosed at a sidebar that it believed that, during trial preparation, Officer Dumas had told the Government that he had prepared the property inventory sheet himself. *Id.* at 192:16-193:13. The Government posited that the term "preparing" may have been ambiguous. *Id.* During the sidebar, Frazier's counsel said, "I don't have anything to add," and he did not re-cross Officer Dumas. *Id.* at 193:14-15, 195:25-196:1.

Previously, Counsel performed a competent cross-examination of Officer Dumas, including what information was reported in over the radio, who secured the firearm, and who drafted the property inventory sheet. *Id.* at 177:11-178:19, 186:9-14, 186:22-188:1. Notably by asking about the property inventory sheet, counsel elicited testimony that contradicted the testimony of Officer Pena, who had testified that Officer Dumas prepared the property inventory sheet. *Id.* at 95:16-19.

Here, the decision not to re-cross Officer Dumas on this matter is presumed to be a strategic decision by trial counsel. *See Traeger*, 289 F.3d at 472. Counsel had already cross-examined Officer Dumas. The discrepancy between the testimonies of Officer Dumas and Officer Pena about the author of the report had already been uncovered. Re-crossing Officer Dumas may have provided an explanation regarding the inconsistency that would have rehabilitated the witnesses and ultimately harmed Frazier's position, so it was objectively reasonable to not pursue the matter

further. The presumption that counsel made a strategic decision has not been rebutted, and such decisions are not to be second-guessed on review or subjected to "Monday morning quarterbacking." *See United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009). A competent attorney could decide against pursuing this line of questioning.

Without deficient performance, there is no ineffective assistance of counsel. Frazier is not entitled to relief under § 2255 due to ineffective assistance of counsel.

### B. Retroactivity of *Rehaif*

In *Rehaif*, the Supreme Court held that, for a defendant to be found guilty of violating 18 U.S.C. § 922(g), the government must prove that the defendant knew they possessed a firearm and also knew that they had the status of being prohibited from doing so. 139 S. Ct. at 2195. Frazier now argues that he was unaware that he was prohibited from possessing a firearm at the time that he possessed it. The Government asserts that this argument is procedurally defaulted.

Collateral review cannot serve as a second appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982). A constitutional issue not raised on direct appeal can be raised on collateral review if "the defendant can demonstrate cause for the procedural default as well as actual prejudice from the failure to appeal." *Barker v. United States*, 7 F.3d 629, 632 (7th Cir. 1993). Cause "means some impediment to making the argument." *Turner v. United States*, 693 F.3d 756, 758 (7th Cir. 2012). The perception that an argument is unlikely to succeed does not qualify as cause. *Id.* Frazier offers no argument that he was prevented from making an argument of lack of knowledge of his status as a convicted felon at trial. There is no cause for the procedural default.

However, even in the absence of cause, there may be an equitable exception to procedural default in cases of actual innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]e think that in an extraordinary case, where a

10

constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.")).

However, Frazier has not shown that he is actually innocent of a § 922(g) violation due to not knowing that he had been convicted of a felony. Ignorance of felon status is implausible where the individual was incarcerated for more than one year. *See United States v. Payne*, 964 F.3d 652, 656 (7th Cir. 2020). Here, the presentence investigation report indicates that Frazier was incarcerated for more than one year on his felony robbery conviction in Cook County, Illinois, Circuit Court case number 00-CR-2555001. Frazier has presented no evidence that he was unaware of his status as a felon at the time of the events leading to his arrest. Therefore, the Court finds that Frazier has not plausibly asserted that he is actually innocent. Frazier has procedurally defaulted on his claim under *Rehaif* and the equitable exception does not apply. There is no ground for § 2255 relief here.

### C. Request for Evidentiary Hearing

The Court may deny a § 2255 motion without an evidentiary hearing "where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Torzola v. United States*, 545 F.3d 517, 525 (7th Cir. 2008). A hearing is also not necessary if the petitioner makes "vague, conclusory, or palpably incredible" allegations instead of ones that are "detailed and specific." *Martin v. U.S.*, 789 F.3d 703, 706 (7th Cir. 2015) (quoting *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006)). "[I]n order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Kafo*, 467 F.3d at 1067 (quoting

11

*Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996)); *accord Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989).

Here, Frazier has presented no affidavit or other evidence in support of his arguments. No hearing is necessary to resolve this motion, so the request for an evidentiary hearing is denied.

### D. Certificate of Appealability

Section 102 of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") provides that a Certificate of Appealability may be issued only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473 (2000) (citing *Barefoot v. Estelle*, 462 U.S. 880, 893, n.4 (1983) superseded on other grounds by 28 U.S.C. § 2253(c). Frazier has not made such a substantial showing, so the Court declines to enter a certificate of appealability.

### CONCLUSION

Based on the forgoing, the Court hereby **DENIES** the Motion Under 28 U.S.C. § 2255 [DE 128] and **DECLINES** to enter a certificate of appealability.

SO ORDERED on February 14, 2022.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT
